IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| LARRY D. REID and LARRY REID LIVE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LAVONTRAYE ANDREWS,<br><br>Defendant. | [PROPOSED] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT<br><br>Civil Action No.: 1:23-cv-705 |

This matter is before the Court on Plaintiffs' Motion for Default Judgment [D.E. # 11]. Plaintiffs filed this matter on August 18, 2023. [D.E. #1]. Defendant Lavontraye Andrews ("Mr. Andrews") was served on August 25, 2023, as evidenced by the affidavit of Ron Mann. [D.E. #6]. Mr. Andrews' deadline to respond to the Complaint was September 15, 2023. [D.E. #6]. Mr. Andrews failed to respond to the Complaint by September 15, 2023, and has not responded to the Complaint as of the date of this motion. Default was entered by the Clerk on September 25, 2023. [DE #10]. The Court finds that Mr. Andrews has admitted the well-pleaded factual allegations of the Complaint.

The Court finds, based on the Motion for Default Judgment [DE #11] and Memorandum of Law in Support of the Motion for Default Judgment [DE #12], that the Motion for Default Judgment is meritorious and should be GRANTED as to the Plaintiffs' First Cause of Action, Defamation and Slander *per se*. The Motion for Default Judgment is limited solely to the First Cause of Action, and the Court takes no action here with respect to the Plaintiffs' Second and Third Causes of Action. The Court makes the following FINDINGS OF FACT:

Plaintiff Larry D. Reid ("Dr. Reid"), a Christian minister, began his church, Breakthrough

Temple Apostolic Holiness Church ("Breakthrough"), in 1998 in Fayetteville, North Carolina. Complaint (Dkt 1) at ¶ 9. Mr. Andrews was introduced to Breakthrough in 2006 when he was 15 years old. *Id.* ¶ 15. Mr. Andrews at first had no relationship with Dr. Reid, but instead was mentored by Chamaco Bryant, another church elder. *Id.* ¶ 17. Mr, Bryant spent a lot of time with Mr. Andrews and discovered that Mr. Andrews had a history of falsely accusing men of sexually abusing him, and that he continued to do so in Mr. Bryant's presence, making allegations of sexual abuse, and then recanted them when pressed. *Id.* ¶¶ 19-20. Dr. Reid first met Mr. Andrews in 2007, when Mr. Andrews was 17 years old.

Dr. Reid moved the Breakthrough church to Raleigh in 2007, and Mr. Andrews and his mother also moved to Raleigh because the church agreed to provide them with a place to live. *Id.* ¶¶ 22-25. In January 2008, Mr. Andrews moved into a house on Olustree Drive owned by Dr. Reid for the purpose of housing other church members; Mr. Reid did not live in the Olustree Drive home at that time. *Id.* ¶ 34. This home had not been built and issued a certificate of occupancy until October of 2006, when the Mr. Andrews was 16 years old. *Id.* at ¶ 31. Mr. Andrews was eventually kicked out of the Olustree Drive house for stealing the car of a church elder who also lived in the home. *Id.* ¶¶ 36-37.

In 2009, when Mr. Andrews was 18 years old, he was given permission to move back into the Olustree Drive house. *Id.* ¶ 38. Although Dr. Reid had not lived in that house when Mr. Andrews lived there the first time, Dr. Reid was living there when Mr. Andrews moved back in for the second stint. *Id.* Mr. Andrews was again kicked out of the Olustree Drive house in January 2010, this time for stealing a car (again), skipping school, and having sexual relationships with another girl from the church. *Id.* at ¶¶ 38-40. Not only was Mr. Andrews kicked out of the house, but he and his girlfriend were kicked out of the church as well. *Id.* at ¶¶ 40-44.

Mr. Andrews first made general allegations that Dr. Reid had molested him in 2010. *Id*. at ¶ 46. He later recanted these allegations, admitting that they were false. *Id.* at ¶ 49. Mr. Andrews and his girlfriend eventually married each other and begged to be accepted back into Breakthrough. *Id.* at ¶¶ 45, 50. After extensive begging from Mr. Andrews and his mother, Dr. Reid conceded, and the couple returned to the church and again lived in homes provided by the church or its members. *Id.* at ¶¶ 51-53. Mr. Andrews eventually became the lead drummer for Breakthrough and also for Dr. Reid's gospel band, which involved national tours and other glamorous opportunities. *Id.* at ¶¶ 54-62.

In 2016, Dr. Reid began streaming a show on the Internet, Larry Reid Live. *Id.* at ¶ 63. Due to its sustained success, as well as Dr. Reid's burnout from trying to house, feed, and minister his congregation, Dr. Reid made the difficult decision to shut down Breakthrough and transition to a virtual ministry in 2017. *Id.* at ¶¶ 71-75. This included cutting off contact with all Breakthrough members. *Id*. at ¶ 74.

Following the dismantling of Breakthrough, and after seven years, in 2017 Mr. Andrews again told lies about being molested by Dr. Reid. *Id.* at ¶ 80. Then in 2018, Mr. Andrews filed a false police report with the Raleigh Police Department accusing Dr. Reid of sexual abuse. *Id*. at ¶ 84. Dr. Reid was totally unaware of this police report until 2019, when Mr. Andrews provided the report to a YouTuber who published the false allegations and described the false police report in a video on his YouTube channel. *Id.* at ¶¶ 84-88. During the 2019 YouTube interview, Mr. Andrews claimed to have been molested by Dr. Reid when Mr. Andrews was 14. *Id.* at ¶ 87. Dr. Reid did not meet Mr. Andrews until he was 17. *Id.* at ¶ 29.

On July 24, 2022, Lamor Whitehead, a pastor of a New York church, was robbed at gunpoint while streaming his online church service. *Id.* at ¶ 91. The video of the robbery was thus

available for the world to see. *Id.* According to news reports, Mr. Whitehead, a "showy pastor," was robbed of more than one million dollars' worth of jewelry including his watch, multiple chains, his wedding band, and necklaces. *Id.* at ¶ 92. After the robbery, Dr. Reid published a series of videos on Dr. Reid's Youtube channel discussing the robbery and discussing Mr. Whitehead's integrity, raising the question of whether Mr. Whitehead was a scammer. *Id.* at ¶¶ 93-94.

Mr. Whitehead was angry with Dr. Reid for the unflattering reporting, and he began a campaign against Dr. Reid that included numerous derogatory social media posts and a civil lawsuit. *Id.* at ¶ 97. As part of this campaign, Mr. Whitehead obtained the old videos showing Mr. Andrews' allegations against Dr. Reid and decided to use them as additional ammunition against his foe. *Id.* at ¶ 98.

Mr. Whitehead created an "Exposing Reid" segment on his Facebook platform where he played the old Youtube interview. *Id.* at ¶ 99. During the videos, Mr. Andrews' defamatory statements were rebroadcast to a much wider audience. *Id.* at ¶ 99. On October 8, 2022, Mr. Whitehead published a video in which he interviewed Mr. Andrews. *Id.* at ¶ 102. In that interview, Mr. Andrews repeated his allegations of sexual abuse against Dr. Reid, and made the following statements, which are false:

   a. "Larry Reid molested me" (52:19-35);
   b. When asked about the "open investigation" in North Carolina, referring to his 2018 incident report made to the Raleigh Police Department alleging sexual abuse by Dr. Reid, Mr. Andrews claimed that the investigation in North Carolina "is for sure still open," which falsely suggested there was an active investigation by the Raleigh Police Department against Dr. Reid for sexual misconduct. (1:12:10-31);
   c. That Mr. Andrew's allegation of molestation "is proven" (52:31);

4

d. "The reality is he (Dr. Reid) did something inappropriate with a teenager, a child." (54:10-21);

e. "In a nutshell, he molested me." (54:21-30);

f. He (Dr. Reid) did things to him and gave it a "spiritual basis." (55:40-44);

g. "Getting to the age thing, one of the other guys that I talked to...a couple years ago, I did an interview with a guy and me talking quick, I said 14. . . . [but] I was 15 when [the alleged sexual abuse] happened." (53: 36 to 54:10).

Mr. Andrews also used this October 8 interview to try to correct some of the obvious impossibilities in the prior statements he made on YouTube. *Id.* at ¶ 105. In the October 8 interview, he changed the facts, asserting that he was molested at 15 (not 14, as he stated in the first interview and presumably in the police report), and claiming that the molestation could have occurred at a home other than Olustree Drive house (when he had previously been unequivocal that the molestation occurred in that house in the interview and the police report). *Id.*

Later, in January of 2023, Mr. Andrews took his lies to even more visible platform by giving an interview to infamous YouTube personality Tasha K. *Id.* at 121. On January 12, 2023, Tasha K published a two-hour long interview with Mr. Andrews titled "Larry Reid | Pastor? PROPHET? Or PEDO? | The Story of 15 Year Old Lavontray[sic] Andrews." *Id.* at ¶ 121. In that video, Mr. Andrews made the following false statements about Dr. Reid:

a. "He was wrapped up naked in a blanket . . he told me to take off all my clothes and told me to sit down beside him." [1:37];

b. "He put porn on. Gay porn. And he told me to watch it." [1:37];

c. He asked Mr. Andrews to "film yourself dancing naked." [1:40];

d. "so he was like, 'well why don't you just turn around then'" and "he started jacking

off." [1:41];

e. "He wanted me to take all my clothes off and lay on the floor, lay on my back. And he starts giving me a massage . . and he finally just grabbed it. I was like 'yo, whoa,' . . .and he was like 'just relax, just relax . . .this is part of the test' and he proceeds to jack me off." [1:45];

f. Dr. Reid would pay him "$60" to dance naked in front of him [1:52].

Based on the foregoing findings of fact, the Court makes the following CONCLUSIONS OF LAW:

1. Default judgment is appropriate in this case because Mr. Andrews has failed to plead or otherwise defend himself against this action. *See Ohio Cas. Ins. Co. v. Am. Tec Elec. Co.*, No. 1:23-cv-253, 2023 U.S. Dist. LEXIS 169932, at *3 (M.D.N.C. Sep. 25, 2023) (citation omitted).

2. Defendant Lavontraye Andrews is "deemed to have admitted the well-pleaded factual allegations contained in the complaint." *See Henley v. Regency One Capital, LLC*, No. 1:22-cv-422, 2023 U.S. Dist. LEXIS 154275, at *3-4 (M.D.N.C. Aug. 30, 2023) (citation omitted).

3. "A federal court sitting in diversity or supplemental jurisdiction generally applies the relevant substantive law of the state in which the court sits, while applying federal procedural law." *Nat'l Quarry Servs. v. First Mercury Ins. Co.*, 372 F. Supp. 3d 296, 301 (M.D.N.C. 2019).

4. In North Carolina, "[i]n order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020) (citation omitted).

5. "To establish a claim for defamation *per se,* a plaintiff must prove: (1) defendant

6

spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person. *Friel v. Angell Care, Inc.,* 113 N.C. App. 505, 509, 440 S.E.2d 111 (N.C. App. 1994). For defamation *per se,* malice and damages are presumed as a matter of law. *Donovan v. Fiumara,* 114 N.C. App. 524, 527, 442 S.E.2d 572 (N.C. App. 1994)." *Cummings v. Lumbee Tribe*, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008).

6. "False accusations of crime or offenses involving moral turpitude are actionable as slander *per se*." *Kroh v. Kroh*, 152 N.C. App. 347, 355, 567 S.E.2d 760, 765 (2002) (finding false allegations of sexual abuse of minors to be defamation *per se*).

7. The well-pleaded and admitted factual allegations of the Complaint establish that the Defendant, Lavontraye Andrews, made false, defamatory statements of or concerning Plaintiff Larry D. Reid, which falsely accused him sexual abuse of a minor and sexual criminal offenses.

8. Specifically, the following statements made by Mr. Andrews on October 8th, 2022 in an interview with Lamor Whitehead and published on Youtube and Facebook are false and defamatory as a matter of law:

   a. "Larry Reid molested me" (52:19-35);
   b. When asked about the "open investigation" in North Carolina, referring to his 2018 incident report made to the Raleigh Police Department alleging sexual abuse by Dr. Reid, Mr. Andrews claimed that the investigation in North Carolina "is for sure still open," which falsely suggested there was an active investigation by the Raleigh Police Department against Dr. Reid for sexual misconduct. (1:12:10-31);
   c. That Mr. Andrew's allegation of molestation "is proven" (52:31);

7

d. "The reality is he (Dr. Reid) did something inappropriate with a teenager, a child." (54:10-21);

e. "In a nutshell, he molested me." (54:21-30);

f. He (Dr. Reid) did things to him and gave it a "spiritual basis." (55:40-44);

g. "Getting to the age thing, one of the other guys that I talked to...a couple years ago, I did an interview with a guy and me talking quick, I said 14. . . . [but] I was 15 when [the alleged sexual abuse] happened." (53: 36 to 54:10).

9. The following statements made in an interview with Tasha K and published on January 12, 2023, on YouTube and Patreon are false and defamatory as a matter of law:

a. "He was wrapped up naked in a blanket . . he told me to take off all my clothes and told me to sit down beside him." [1:37];

b. "He put porn on. Gay porn. And he told me to watch it." [1:37];

c. He asked Mr. Andrews to "film yourself dancing naked." [1:40];

d. "so he was like, 'well why don't you just turn around then'" and "he started jacking off." [1:41];

e. "He wanted me to take all my clothes off and lay on the floor, lay on my back. And he starts giving me a massage . . and he finally just grabbed it. I was like 'yo, whoa,' . . .and he was like 'just relax, just relax . . .this is part of the test' and he proceeds to jack me off." [1:45];

f. Dr. Reid would pay him "$60" to dance naked in front of him [1:52].

10. Those false and defamatory statements were published to third parties by virtue of their publication on the internet, specifically on YouTube, Patreon, and Facebook.

11. Those false and defamatory statements, which were false accusations of sexual abuse

of a minor and criminal sexual offenses, tended to prejudice Dr. Reid in his reputation, office, trade, business, or means of livelihood, and tended to hold him up to disgrace, ridicule, or contempt.

12. Mr. Andrews' false and defamatory accusations of sexual criminal offenses, specifically that Dr. Reid sexually molested him when he was underage, constitute defamation *per se* under North Carolina law. *See Kroh v. Kroh,* 152 N.C. App. 347, 355, 567 S.E.2d 760, 765 (2002).

13. Mr. Andrews' publication of these defamatory statements, which are defamatory *per se*, is sufficient grounds for recovery of nominal damages without further specific allegations of proof of damages. *See e.g. R. H. Bouligny, Inc. v. United Steelworkers of Am.*, 270 N.C. 160, 168-69, 154 S.E.2d 344, 353 (1967); *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 284, 182 S.E.2d 410, 414 (1971).

WHEREFORE, based on the foregoing findings of fact and conclusions of law, the Cour finds that Mr. Andrews' statements in the videos posted to YouTube, Facebook, and Patreon constitute libel and GRANTS the Plaintiffs' Motion for Default Judgment on the Plaintiffs' First Cause of Action, Defamation and Slander *per se*. The Clerk of Court is directed to enter judgment against Mr. Andrews and in favor of the Plaintiffs in the amount of One Thousand Dollars ($1000.00) on the Plaintiffs' First Cause of Action. This order does not dispose of the Plaintiffs' Second and Third Causes of Action, upon which Mr. Andrews has previously defaulted.

SO ORDERED, this the \_\_\_\_ day of November, 2023.

_____
The Honorable William L. Osteen, Jr.
United States District Court Judge