**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| LARRY D. REID and LARRY REID LIVE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LAVONTRAYE ANDREWS,<br><br>Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>**Civil Action No.: 1:23-cv-705** |

Now come Plaintiffs, Larry D. Reid and Larry Reid Live, LLC, by and through their undersigned counsel and pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 7.2 of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina, and submits this Memorandum of Law in Support of Motion for Default Judgment.

## INTRODUCTION

Lavontraye Andrews went on a media spree earlier this year, giving interviews on multiple platforms in which he accused his former pastor and mentor of sexual assault. Only Mr. Andrews knows his true motivations, but the nature of the interviews strongly infers that Mr. Andrews was seeking donations and celebrity status.

Despite the outrageousness of the accusations, Dr. Reid initially hoped that Mr. Andrews would tire of the escapade and that the defamation would stop on its own. Unfortunately, Mr. Andrews kept going, changing his story with new dates and locations in an attempt to "fix" his provably impossible narrative, pursuing additional media opportunities, and making even more

false claims about Dr. Reid, even giving a multi-part interview with Tasha K, a notorious gossip influencer who has admitted that she doesn't concern herself with the truth of her allegations.

Dr. Reid's reputation is built on his integrity and good name. Given his status as a minister and man of God, the accusations here are exceptionally harmful, and have resulted in lost relationships and opportunities for Dr. Reid. This lawsuit was the only way Dr. Reid could seek to repair his reputation. Mr. Andrews has not defended the case, likely because he knows he has no evidence to support his false claims, and knows that he has told too many versions of the story to defend any particular version.

Dr. Reid has thought carefully about what relief he should pursue in this matter now that Mr. Andrews has defaulted. Under the present circumstances, Dr. Reid simply wants to clear his name and deter Mr. Andrews from repeating his lies any further. Dr. Reid therefore is willing to limit his pursuit of damages to nominal damages, along with a finding that that Mr. Andrews' claims were false and defamatory.

## QUESTION PRESENTED

Should the Court enter default judgment against the Mr. Andrews as to Plaintiffs' First Cause of Action, Defamation and Slander *per se*?

## PROCEDURAL BACKGROUND

This matter is before the Court on Plaintiffs' Motion for Default Judgment. Plaintiffs filed this matter on August 18, 2023. [D.E. #1]. Mr. Andrews was served on August 25, 2023, as evidenced by the affidavit of Ron Mann. [D.E. #6]. Mr. Andrew's deadline to respond to the Complaint was September 15, 2023. [D.E. #6]. Mr. Andrews failed to respond to the Complaint by September 15, 2023, and has not responded to the Complaint as of the date of this motion. Default was entered by the Clerk on September 25, 2023. [DE #10].

## FACTUAL BACKGROUND

### A. DR. REID AND EARLY MINISTRY

Dr. Reid, a Christian minister, began his church, Breakthrough Temple Apostolic Holiness Church ("Breakthrough"), in 1998 in Fayetteville, North Carolina. Complaint (Dkt 1) at ¶ 9. Mr. Andrews was introduced to Breakthrough in 2006 when he was 15 years old. *Id.* ¶ 15. Mr. Andrews' mother had brought her son to church in hopes that the ministry would be a positive influence on his troubling behavior, which included truancy, lying, poor grades, and theft. *Id.* ¶ 16. Mr. Andrews at first had no relationship with Dr. Reid, but instead was mentored by Chamaco Bryant, another church elder. *Id.* ¶ 17. Mr. Bryan spent a lot of time with Mr. Andrews and discovered that Mr. Andrews had a history of falsely accusing men of sexually abusing him, and that he continued to do so in Mr. Bryant's presence, making allegations of sexual abuse, and then recanted them when pressed. *Id.* ¶¶ 19-20.

### B. LAVONTRAYE ANDREWS' RELATIONSHIP WITH BREAKTHROUGH

Dr. Reid first met Mr. Andrews in 2007, when Mr. Andrews was 17 years old. *Id.* The two were not close, and most of Dr. Reid's prior awareness of Mr. Andrews related to ongoing reports of issues with Mr. Andrews' petty crimes, lies, and misbehavior, which resulted in Mr. Andrews being evicted from a residence run by the ministry. *Id.* ¶¶ 27-28; 36-37.

Dr. Reid moved the Breakthrough church to Raleigh in 2007, and Mr. Andrews and his mother also moved to Raleigh because the church agreed to provide them with a place to live. *Id.* ¶¶ 22-25. In January 2008, Mr. Andrews moved into a house on Olustree Drive owned by Dr. Reid. *Id.* ¶ 34. This home had not been built and issued a certificate of occupancy until October of 2006, when the Mr. Andrews was 16 years old. *Id.* at ¶ 31. Mr. Andrews was eventually kicked out of the Olustree Drive house for stealing the car of a church elder who also lived in the home.

*Id.* ¶¶ 36-37.

In 2009, when Mr. Andrews was 18 years old, he was given permission to move back into the Olustree Drive house. *Id.* ¶ 38. Although Dr. Reid had not lived in that house when Mr. Andrews lived there the first time, Dr. Reid was living there when Mr. Andrews moved back in for the second stint. *Id.* Mr. Andrews was again kicked out of the Olustree Drive house in January 2010, this time for stealing a car (again), skipping school, and having sexual relationships with another girl from the church. *Id.* at ¶¶ 38-40. These violations were the last straw – not only was Mr. Andrews kicked out of the house, but he and his girlfriend were kicked out of the church as well. *Id.* at ¶¶ 40-44.

Apparently unhappy that Dr. Reid removed him and his girlfriend from the ministry, Mr. Andrews first made general allegations that Dr. Reid had molested him in 2010. *Id*. at ¶ 46. He later recanted these allegations, admitting that they were false. *Id.* at ¶ 49.

Mr. Andrews and his girlfriend eventually married each other and begged to be accepted back into Breakthrough. *Id.* at ¶¶ 45, 50. After extensive begging from Mr. Andrews and his mother, Dr. Reid conceded, and the couple returned to the church and again lived in homes provided by the church or its members. *Id.* at ¶¶ 51-53. Mr. Andrews eventually became the lead drummer for Breakthrough and also for Dr. Reid's gospel band, which involved national tours and other glamorous opportunities. *Id.* at ¶¶ 54-62. From 2011 to 2016, Mr. Andrews entire life was dependent on Dr. Reid and Breakthrough, not only for housing and community, but also for employment, self-worth, and stature. Indeed, outside of his job as a drummer for Dr. Reid, Mr. Andrews had no other meaningful employment, as he did not have any marketable skills or even a high school diploma. *Id.* at ¶ 62.

## C. LARRY REID LIVE AND CHURCH DISMANTLING

In 2016, Dr. Reid began streaming a show on the Internet, Larry Reid Live. *Id.* at ¶ 63. Due to its sustained success, as well as Dr. Reid's burnout from trying to house, feed, and minister his congregation, Dr. Reid made the difficult decision to shut down Breakthrough and transition to a virtual ministry in 2017. *Id.* at ¶¶ 71-75. This included cutting off contact with all Breakthrough members. *Id*. at ¶ 74. With Breakthrough closed, Mr. Andrews eventually lost everything: his home, his income, and his sense of importance. *Id*. at ¶ 78.

Dr. Reid should have been more thoughtful about how the closure of Breakthrough would affect the congregation, and he admits the mistake now. *Id*. at ¶ 79. But Dr. Reid did not appreciate at the time that the dismantling of Breakthrough would be devastating to Mr. Andrews. *Id*. at ¶ 75.

## D. MR. ANDREWS' CAMPAIGN AGAINST DR. REID

Just as Mr. Andrews had lashed out at the men who disappointed him before by inventing allegations of molestation, Mr. Andrews did it again in 2017 immediately following the dismantling of Breakthrough and Dr. Reid's distancing from Mr. Andrews. For the first time in seven years, Mr. Andrews again told lies about being molested by Dr. Reid. *Id.* at ¶ 80. Then in 2018, Mr. Andrews filed a false police report with the Raleigh Police Department accusing Dr. Reid of sexual abuse. *Id*. at ¶ 84. Dr. Reid was totally unaware of this police report until 2019, when Mr. Andrews provided the report to a YouTuber who published the false allegations and described the false police report in a video on his YouTube channel. *Id.* at ¶¶ 84-88. Dr. Reid was never contacted, no charges were ever brought, and there is currently no active investigation into this claim by the Raleigh Police Department. *Id*. at ¶ 88. Notably, during the 2019 YouTube interview, Mr. Andrews claimed to have been molested by Dr. Reid when Mr. Andrews was 14. *Id.* at ¶ 87. As set forth above, Dr. Reid did not even meet Mr. Andrews until he was 17. *Id.* at ¶

29. After Mr. Andrews' YouTube interview, Dr. Reid sent a cease-and-desist letter to Mr. Andrews through his counsel. *Id.* at ¶ 89. As a result of the cease-and-desist letter, it appeared that Mr. Andrews refrained from spreading the false child molestation rumors until his most recent alliance with Lamor Whitehead.

On July 24, 2022, Mr. Whitehead, a pastor of a New York church, was robbed at gunpoint while streaming his online church service. *Id.* at ¶ 91. The video of the robbery was thus available for the world to see. *Id.* According to news reports, Mr. Whitehead, a "showy pastor," was robbed of more than one million dollars' worth of jewelry including his watch, multiple chains, his wedding band, and necklaces. *Id.* at ¶ 92. After the robbery, Dr. Reid published a series of videos discussing the robbery and discussing Mr. Whitehead's integrity, raising the question of whether Mr. Whitehead was a scammer. *Id.* at ¶¶ 93-94.

Mr. Whitehead blamed Dr. Reid for the largely negative media frenzy that followed. *Id.* ¶ 95. Beginning that day, and continuing to the present, Mr. Whitehead has engaged in an all-out assault on Dr. Reid, which has taken many forms, including numerous social media posts and a civil lawsuit for defamation. *Id.* at ¶ 97. Mr. Whitehead was undoubtedly thrilled to discover the existence of the 2019 Youtube videos featuring Mr. Andrews' outrageous accusations against Dr. Reid, and he decided to use them as additional ammunition against Dr. Reid. *Id.* at ¶ 98. To that end, Mr. Whitehead created a segment on his Facebook platform he titled "Exposing Reid," where he rehashed Mr. Andrews' prior lies and defamatory accusations. *Id*. at ¶ 99. Eventually, on October 8, 2022, Mr. Whitehead hosted Mr. Andrews on his platform, where, in a video viewed by thousands of people, Mr. Andrews again defamed Dr. Reid. *Id.* at ¶ 102.

Specifically, Mr. Andrews made the following defamatory statements on October 8, 2022, which are the subject of this lawsuit:

- "Larry Reid molested me;"
- That Dr. Reid was the target of an active criminal investigation by the Raleigh Police Department for sexual abuse and misconduct;
- That his allegations of molestation were "proven;"
- "The reality is [Dr. Reid] did something inappropriate with a teenager, a child."
- "In a nutshell, [Dr. Reid] molested me."

*Id.* at ¶ 103. These allegations were all false, as alleged in the Complaint and as admitted by Mr. Andrews by failing to answer. *Id.* at ¶ 104.

Mr. Andrews also used this October 8 interview to try to correct some of the obvious impossibilities in the prior statements he made on Youtube. *Id.* at ¶ 105. In the October 8 interview, he changed the facts, asserting now that he was molested at 15 (not 14, as he stated in the first interview and presumably in the police report), and claiming that the molestation could have occurred at a home other than Olustree Drive house (when he had previously been unequivocal that the molestation occurred in that house in the interview and the police report) . *Id.* He changed his story again to say that he was 15 when he was supposedly abused by Dr. Reid, despite not having met him until he was 17. *Id.* Notably, the Olustee Drive house, *which Mr. Andrews listed in the police report*, was built when Mr. Andrews was 16. *Id.* at ¶¶ 106-108.

Later, in January of 2023, Mr. Andrews took his lies to even more visible platform by giving an interview to infamous YouTube personality Tasha K. *Id.* at 121. On January 12, 2023, Tasha K published a two-hour long interview with Mr. Andrews titled "Larry Reid | Pastor? PROPHET? Or PEDO? | The Story of 15 Year Old Lavontray[sic] Andrews." *Id.* at ¶ 121. In this

interview[1], Mr. Andrews made a litany of extremely graphic, disturbing false statements about Dr. Reid. *Id.* at ¶ 123. Specifically, he said:

- "[Dr. Reid] was wrapped up naked in a blanket. He told me to take off all my clothes and told me to sit down beside him." [1:37]
- "He put porn on. Gay porn. And he told me to watch it." [1:37]
- Dr. Reid asked Mr. Andrews to "film yourself dancing naked." [1:40]
- "so he was like, 'well why don't you just turn around then'" and "he started jacking off." [1:41]
- "He wanted me to take all my clothes off and lay on the floor, lay on my back. And he starts giving me a massage ... and he finally just grabbed it. I was like 'yo, whoa,' . . .and he was like 'just relax, just relax . . .this is part of the test' and he proceeds to jack me off." [1:45]
- Dr. Reid would pay Mr. Andrews "$60" to dance naked in front of him [1:52]

None of the statements were true, and all were intended to defame Dr. Reid and damage him.

## ARGUMENT

### I. The Court Should Enter Default Judgment Against Mr. Andrews as to Liability on the Plaintiffs' First Cause of Action

#### a. Mr. Andrews has admitted the well-pleaded factual allegations of the Complaint

Default judgment is appropriate when a defendant has failed to plead or otherwise defend an action. "Generally, if a defendant fails to plead or otherwise defend an action, this court has the discretion to enter default judgment as to that defendant." *Ohio Cas. Ins. Co. v. Am. Tec Elec. Co.*,

[1] A clip of the longer video is available at https://www.youtube.com/watch?v=vAhOMnEnMVg. Compl. at ¶ 122.

No. 1:23-cv-253, 2023 U.S. Dist. LEXIS 169932, at *3 (M.D.N.C. Sep. 25, 2023) (citation omitted). "Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." *Henley v. Regency One Capital, LLC*, No. 1:22-cv-422, 2023 U.S. Dist. LEXIS 154275, at *3-4 (M.D.N.C. Aug. 30, 2023) (citation omitted).

Here, Mr. Andrews has wholly failed to respond to the Complaint and has had default entered against him by the Clerk. Therefore, as a matter of law, he has admitted the well-pleaded factual allegations of the Complaint.

b. Dr. Reid has pled a claim of defamation *per* se

In North Carolina[2], "[i]n order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020) (citation omitted). "To establish a claim for defamation *per se,* a plaintiff must prove: (1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person. *Friel v. Angell Care, Inc.,* 113 N.C. App. 505, 509, 440 S.E.2d 111 (N.C. App. 1994). For defamation *per se,* malice and damages are presumed as a matter of law. *Donovan v. Fiumara,* 114 N.C. App. 524, 527, 442 S.E.2d 572 (N.C. App. 1994)." *Cummings v. Lumbee Tribe*, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008). "In reviewing whether a plaintiff has stated a claim of defamation *per se*, the allegedly defamatory statement 'alone must be construed, stripped of all insinuations, innuendo,

[2] "A federal court sitting in diversity or supplemental jurisdiction generally applies the relevant substantive law of the state in which the court sits, while applying federal procedural law." *Nat'l Quarry Servs. v. First Mercury Ins. Co.*, 372 F. Supp. 3d 296, 301 (M.D.N.C. 2019).

colloquium and explanatory circumstances. The [statement] must be defamatory on its face within the four corners thereof.' *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 318-19, 312 S.E.2d 405, 409 (internal quotation marks and citation omitted), *cert. denied*, 469 U.S. 858, 105 S. Ct. 187, 83 L. Ed. 2d 121 (1984). "The question always is how would ordinary men naturally understand the [statement.]" *Id.* at 318, 312 S.E.2d at 409 (citation omitted)." *Id.* at 609, 840 S.E.2d, 317. "False accusations of crime or offenses involving moral turpitude are actionable as slander *per se*." *Kroh v. Kroh*, 152 N.C. App. 347, 355, 567 S.E.2d 760, 765 (2002)

Here, the uncontested facts show that the Mr. Andrews made false statements to third parties about Dr. Reid, stating on numerous occasions and on numerous public platforms that Dr. Reid sexually abused him, which was not true. These false accusations of crimes, or at the least "offenses involving moral turpitude," are defamation *per se* under North Carolina law, and do not require proof of damages. *See Id.* In *Kroh*, the North Carolina Court of Appeals upheld a finding of defamation *per se* against a wife who had falsely told third parties that "her husband was having sex with the family dog and molesting her children." *Id.* The fact finder found that there was "no evidence from which a reasonable person could conclude that sexual misconduct had occurred," and on that basis, found the wife liable for defamation *per se*. *Id.* at 357, 567 S.E.2d at 766.

In this case, the admitted Complaint makes clear that Mr. Andrews falsely told third parties that Dr. Reid had sexually assaulted him when he was a minor. Mr. Andrews has not offered any evidence from which a reasonable person could conclude that any sexual misconduct actually occurred. His statements were communicated to the public by way of publication on the Internet; indeed, the Tasha K interview clip alone has been viewed more than fifty thousand times. Mr Andrews, by virtue of failing to respond to this lawsuit, has admitted that the allegations were false. Therefore, the Court should find Mr. Andrews liable for defamation *per se*, as all the

elements of the tort have been shown by the well-pleaded factual allegations of the Complaint, which are deemed admitted.

## II. **The Court Should Award Plaintiffs Damages against Mr. Andrews on the Plaintiffs' First Cause of Action**

"'The publication of any libel is actionable *per se*, that is irrespective of whether any special harm has been caused to the plaintiff's reputation or otherwise. Such a publication is itself an injury and therefore a sufficient ground for recovery of at least nominal damages.'" *R. H. Bouligny, Inc. v. United Steelworkers of Am.*, 270 N.C. 160, 168-69, 154 S.E.2d 344, 353 (1967). "Defamatory charges which are actionable *per se* raise a *prima facie* presumption of malice and a conclusive presumption of legal injury and general damage, entitling plaintiff to recover nominal damages at least without specific allegations or proof of damages" *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 284, 182 S.E.2d 410, 414 (1971).

Dr. Reid did not institute this action seeking to recover a windfall from Mr. Andrews. Dr. Reid's sole motivation in pursuing this claim was to vindicate his reputation and clear his good name. To be clear, Dr. Reid has been damaged by the Mr. Andrews' conduct. His reputation has suffered in the community, and he has lost out on lucrative business opportunities as a direct and proximate result of the Mr. Andrews' lies, which Mr. Andrews published to thousands of people all over the world.

Nonetheless, Dr. Reid has no reason to believe that Mr. Andrews has any assets whatsoever, or that he has ever been employed full-time in any capacity in his entire life. Therefore, a significant damages award would not likely deter Mr. Andrews or compensate Dr. Reid. A judgment for nominal damages therefore hopefully will be sufficient to clear Dr. Reid's name and provide a basis to discourage anyone from providing a forum for Mr. Andrews' lies in

the future. Therefore, Dr. Reid seeks only an award of nominal damages of $1000.00. *See e.g. Griffin v. Holden,* 180 N.C. App. 129, 636 S.E.2d 298 (2006); *Mkt. Choice, Inc. v. New Eng. Coffee Co.,* No. 5:08-CV-90, 2009 U.S. Dist. LEXIS 73627 (W.D.N.C. Aug. 17, 2009); *Ramos v. Smithfield Packing Co.,* No. 7:05-CV-188-BR, 2007 U.S. Dist. LEXIS 113019 (E.D.N.C. Jan. 5, 2007).

Dr. Reid further requests that the judgment make factual findings that the Larry Whitehead and Tasha K videos contain defamatory statements so that Dr. Reid may seek the takedown of these videos with the content creators and hosts.

**CONCLUSION**

For the reasons set forth herein, Plaintiffs request that this Court grant its Motion for Default Judgment and enter judgment against the Mr. Andrews on the Plaintiffs' First Cause of Action in the amount of $1000.00.

This 7th day of November, 2023.

**TAYLOR ENGLISH DUMA LLP**

*/s/ Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
ahyland@taylorenglish.com

*/s/ Ryan Arnold*
Ryan Arnold
North Carolina Bar No. 52010
13925 Ballantyne Corporate Place, Suite 200
Charlotte, North Carolina 28277
Telephone: (984) 232-2992
rarnold@taylorenglish.com

*Attorneys for Plaintiffs*

**NOTICE OF COMPLIANCE**

I hereby certify that the word count in the foregoing Memorandum of Law in Support of Motion Default Judgment is in compliance with LR 7.3(d).

This 7th day of November, 2023.

**TAYLOR ENGLISH DUMA LLP**

*/s/ Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
Florida State Bar No. 37554
ahyland@taylorenglish.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| LARRY D. REID and LARRY REID LIVE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LAVONTRAYE ANDREWS,<br><br>Defendant. | **CERTIFICATE OF SERVICE**<br><br>**Civil Action No.: 1:23-cv-705** |

I hereby certify that I have this day electronically filed the foregoing **Memorandum of Law in Support of Motion for Default Judgment** with the Clerk of the Court using the CM/ECF system, and served Mr. Andrews by sending a copy via Federal Express Overnight Delivery, Signature Required to:

Lavontraye Andrews
4848 Stovall Dr.
Winston Salem, NC 27101

This 7th day of November, 2023.

**TAYLOR ENGLISH DUMA LLP**

*/s/ Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
ahyland@taylorenglish.com